UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
BOZENA KAMINSKI,

       Plaintiff,

 -against-

POLISH & SLAVIC FEDERAL
CREDIT UNION,

       Defendant.
------------------------------------------------------------------ X

06 CV 688 (ARR) (LB)

<u>NOT FOR PRINT OR
ELECTRONIC
PUBLICATION</u>

<u>OPINION AND ORDER</u>

ROSS, United States District Judge:

  Plaintiff pro se Bozena Kaminski commenced the instant action by filing a complaint on February 16, 2006. Plaintiff subsequently filed an Amended Complaint. Defendant, Polish & Slavic Federal Credit Union ("Credit Union"), moves to dismiss the Amended Complaint for lack of subject matter jurisdiction or, in the alternative, to dismiss all claims except Claims 1 and 7 for failure to state a claim upon which relief can be granted. For the reasons set forth below, the court denies defendant's motion.

## BACKGROUND

  The following factual allegations are drawn from plaintiff's Amended Complaint. For the purposes of a motion to dismiss, all facts alleged in the complaint are presumed to be true.

  Plaintiff, a resident of New Jersey, was from 2001 to 2004 a member of the board of directors of the Credit Union, whose principal place of business is in Brooklyn, New York. (Am. Compl. ¶ 4-5, 12.) The National Credit Union Administration ("NCUA") investigated the Credit Union and discovered violations of currency transaction requirements and ineffective internal

1

controls. (Am. Compl. ¶ 14.) In response to NCUA's investigation, the board divided into two factions, with plaintiff, her husband, who was on the board until his removal in April 2006, and others in the minority faction. (Am. Compl. ¶ 13, 15.)

The majority faction raised questions about a mortgage application that plaintiff and her husband submitted to the Credit Union in April 1996, suggesting that the Kaminskis' application was fraudulent. The Credit Union had approved the application and issued a mortgage to the Kaminskis in October 1996. (Am. Compl. ¶ 17-18.)

NCUA reported on November 30, 1997, that the Kaminskis' 1996 application contained "a misleading statement." (Am. Compl. ¶ 20.)

Steven Bisker, counsel to the Credit Union, reported to the Credit Union's Supervisory Committee on August 25, 1998, that, based on additional, material information regarding the Kaminskis' loan application, he found that NCUA had misinterpreted the Credit Union's policies and, moreover, that the Kaminskis had not made any misleading, improper, or fraudulent statements. (Am. Compl. ¶ 21-22.)

The Clayton Group also prepared a report for the Credit Union, citing the assistance of Christopher Baj as a Credit Union "representative on site." (Mr. Baj is elsewhere identified as manager of the Credit Union's Internal Audit Department. (Am. Compl. ¶ 30.)) The Clayton Group Report, dated October 26, 1998, indicated concerns regarding the Kaminskis' loan application. (Am. Compl. ¶ 23-24.)

The Credit Union then retained Skadden, Arps, Slate, Meagher & Flom, LLP ("Skadden Arps") to investigate the Kaminskis' October 1996 loan application and another loan transaction. (Am. Compl. ¶ 25.) Wendy Fleishman authored the Skadden Report, dated December 28, 1998,

which was marked "Attorney-Client Privileged–Confidential." (Am. Compl. ¶ 26.) The Credit Union's board did not share Mr. Bisker's findings with Ms. Fleishman. The Skadden Report instead referred to the NCUA and Clayton Group reports, "suggested that plaintiff and her husband may well have engaged in fraudulent misrepresentations in connection with the mortgage loan application," and recommended that the board seek out civil remedies, such as repayment and rescission of the loans and the removal of plaintiff's husband from the board. (Am. Compl. ¶ 27.)

The Skadden Report contained several exhibits, including the NCUA and Clayton Group reports; the Kaminskis' mortgage application and mortgage; the Kaminskis' tax returns, which included their Social Security numbers and their children's. (Am. Compl. ¶ 28.)

On March 19, 1999, NCUA issued a Temporary Order to Cease and Desist and Notice of Charges and Hearing against the Credit Union, stating as one of the "unsafe and unsound activities of the Supervisory Committee and Internal Auditor" that the Supervisory Committee had directed Mr. Baj to investigate the financial dealings of some board members, including plaintiff's husband, in order "to discredit [them] or cause [their] resignations." (Am. Compl. ¶ 29-30.)

On March 25, 1999, Mr. Bisker reported to the board that the relationship between Mr. Baj and Ms. Fleishman suggested a conflict of interest and the appearance of bias, thereby impeaching the Skadden Report. (Am. Compl. ¶ 32-33.)

On February 19, 2003, Margaret Y. Chudziak, "acting individually and/or on behalf of the Forum Obrony Praw Polonii ("FOPP")," distributed via fax several Credit Union documents concerning plaintiff, including the Skadden Report. (Am. Compl. ¶ 34.) Ms. Chudziak wrote

3

that the Skadden Report was "the only valid legal opinion" and "we are *not* aware of any other legal opinion contradicting this respectful law firm." (Am. Compl. ¶ 34.)

On March 20, 2003, Anthony Gallo, an attorney retained by the Credit Union's then Internal Auditor, Allan Goodwin, reported that he found "no fraudulent intent or conduct [attributable] to the Kaminskis with regard to their mortgage applications." (Am. Compl. ¶ 35.) On March 24, 2003, the law firm of Schulte Roth & Zabel, LLP, issued a report agreeing with Mr. Bisker and the Gallo Report and "exonerating the Kaminskis of any wrongdoing." (Am. Compl. ¶ 35.) The Schulte Report examined these matters and explains "the falsity of each allegation leveled against" the Kaminskis. (Am. Compl. ¶ 37.) The Schulte Report found that the 1997 NCUA report and the Clayton Group Report were based upon inadequate investigation and the Skadden Report was improper due to the conflict of interest arising from Mr. Baj's relationship with Ms. Fleishman. (Am. Compl. ¶ 38-39.)

In early 2005, the Credit Union sued Ms. Chudziak, FOPP, and others in New York State Supreme Court, Kings County ("FOPP Action"). (Pl. Opp'n Ex. D.) Plaintiff complains that in September 2006 the Credit Union paid "$11,000 to the party responsible for the release" of plaintiff's confidential information. (Am. Compl. ¶ 45.) (The Credit Union's attorney attests that the FOPP Action "involved, in part, the disclosure of information of which plaintiff complains in this action." However, the FOPP Action was resolved by a Settlement Agreement containing a confidentiality clause, and the FOPP defendants were unwilling to consent to disclosure without an in-person meeting, the costs of which to be paid by the Credit Union. (Goodnough Aff. at 2-3.) The Credit Union has indicated that it would like to disclose the

4

contents of the Settlement Agreement and that "it should be disclosed, in the interests of justice." (Def. Reply 10.))

In addition, plaintiff has submitted a page from the Credit Union's bylaws, including Article XVI, which provides that all directors must perform their duties "in strict conformity with the provisions of applicable law and regulations, and of the charter and the bylaws of this credit union." (Pl. Opp'n Ex. B.) Article XVI further provides that the directors "must hold in confidence all transactions of this credit union with its members and all information respecting their personal affairs, except when permitted by state or federal law." (Id.)

Plaintiff's Amended Complaint sets forth twelve claims against the Credit Union: (1) negligence in protecting plaintiff's confidential personal and financial records; (2) civil conspiracy by several board members for unlawfully providing confidential information and withholding exculpatory information; (3) defamation for FOPP's publication of libelous statements based upon the Skadden Report and other privileged information disclosed by the Credit Union; (4) violation of the Right to Financial Privacy Act; (5) violation of the Gramm-Leach-Bliley Act; (6) violation of the Privacy Act; (7) breach of contract for failing to perform its obligations pursuant to plaintiff's membership in the Credit Union, specifically, to keep plaintiff's information confidential and to mitigate any damage from the improper release of that information; (8) breach of implied duty of confidentiality, owed by virtue of plaintiff's membership in the Credit Union; (9) breach of fiduciary duty, owed by virtue of plaintiff's membership in the Credit Union; (10) breach of right of privacy, owed by virtue of plaintiff's membership in the Credit Union; (11) breach of the covenant of good faith and fair dealing, owed by virtue of plaintiff's membership in the Credit Union; and (12) mental anguish and emotional

distress, although the allegations in Claim 12 replicate verbatim those for breach of fiduciary duty in Claim 9.

Plaintiff seeks actual damages plus interest and costs for all twelve claims, as well as punitive damages for all her claims except Claim 4. Plaintiff alleges that her actual damages for each of the twelve claims exceeds the court's minimum jurisdictional requirements. (Am. Compl. ¶ 50, 55, 59, 69, 74, 76, 83, 88, 93, 98, 104, 109.)

## DISCUSSION

The Credit Union moves to dismiss for lack of subject matter jurisdiction. The Credit Union argues that federal question jurisdiction does not support this action despite plaintiff's three claims alleging violations of federal law. The Credit Union further argues that plaintiff cannot invoke the court's diversity jurisdiction because the amount in controversy does not exceed $75,000 as required by 28 U.S.C. § 1332(a). In addition, the Credit Union moves to dismiss Claims 2-6 and 8-12 for failure to state a claim upon which relief can be granted. The Credit Union does not move under Fed. R. Civ. P. 12(b)(6) to dismiss Claims 1 and 7. (Def. Mem. 3.)

### A. <u>Standard for a 12(b)(1) Motion to Dismiss</u>

"The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence. After construing all ambiguities and drawing all inferences in a plaintiff's favor, a district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it." <u>Aurecchione v. Schoolman Transp. System, Inc.</u>, 426 F.3d 635, 638 (2d Cir. 2005) (internal quotations and citations omitted). When considering a motion to dismiss for lack of subject matter jurisdiction

under Rule 12(b)(1), the court may consider affidavits and other materials beyond the pleadings. See Robinson v. Gov't of Malaysia, 269 F.3d 133, 140-41 & n.6 (2d Cir. 2001). The court notes its obligation to read the pleadings of a pro se plaintiff liberally and to interpret them to raise the strongest arguments that they suggest. "Nevertheless, the [c]ourt is also aware that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law." Lehman v. Discovery Communications, Inc., 217 F. Supp. 2d 342, 346-47 (E.D.N.Y. 2002) (internal quotations omitted).

### B. Diversity Jurisdiction

Under 28 U.S.C. § 1332(a), this court has original jurisdiction over all civil actions where there is diversity of citizenship and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."

As the party invoking the court's subject matter jurisdiction, plaintiff "has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." Tongkook Am., Inc. v. Shipton Sportswear Co., 14 F.3d 781, 784 (2d Cir. 1994). "This burden is hardly onerous . . . ." Scherer v. Equitable Life Assurance Soc'y of the U.S., 347 F.3d 394, 397 (2d Cir. 2003). There is "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." Id. (quoting Wolde-Meskel v. Vocational Instruction Project Cmty Servs., Inc., 166 F.3d 59, 63 (2d Cir. 1999)). The Second Circuit has "set a high bar for overcoming this presumption." Id.; see also 14B Wright & Miller, Federal Practice and Procedure § 3702 at 98 (describing the task as "very difficult"). To overcome this presumption, defendant "must show 'to a legal certainty' that the amount recoverable does not meet the jurisdictional threshold." Scherer, 347 F.3d at 397

(quoting St. Paul Mercury Indem. Co. v. Red Cap Co., 303 U.S. 283, 288-89 (1938)). "The legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim." Id. (quoting Chase Manhattan Bank, N.A. v. Am. Nat. Bank and Trust Co. of Chicago, 93 F.3d 1064, 1070-71 (2d Cir. 1996)).

"Different state claims brought by a single plaintiff may be aggregated for purposes of satisfying the amount-in-controversy requirement." Colavito v. New York Organ Donor Network, Inc., 438 F.3d 214, 221 (2d Cir. 2006). When the supplemental jurisdiction statute is not implicated, the amount in controversy is measured as of the date of the complaint and so a post-filing event such as the dismissal of "one or more aggregated claims does not defeat jurisdiction even when it reduces the amount in controversy to below the jurisdictional threshold." Hall v. EarthLink Network, Inc., 396 F.3d 500, 506 (2d Cir. 2005) (citing Wolde-Meskel v. Vocational Instruction Project Comty Servs., Inc., 166 F.3d 59, 62-65 (2d Cir. 1999)). In addition, "affirmative 'defenses asserted on the merits' may not be used to whittle down the amount in controversy." Scherer, 347 F.3d at 397 (quoting Zacharia v. Harbor Island Spa, Inc., 684 F.2d 199, 202 (2d Cir. 1982)).

Moreover, "[w]here the damages sought are uncertain, the doubt should be resolved in favor of the plaintiff's pleadings." Tongkook, 14 F.3d at 785; see also Deutsch v. Hewes St. Realty Corp., 359 F.2d 96, 100 (2d Cir. 1966) ("If access to federal district courts is to be further limited it should be done by statute and not by court decisions that permit a district court judge to prejudge the monetary value of an unliquidated claim."); James v. DeGrandis, 138 F. Supp. 2d 402, 422 (W.D.N.Y. 2001) ("Where tort damages are concerned, any doubt about the question of recovery must be resolved in favor of jurisdiction.").

In this case, plaintiff alleges that her actual damages for each claim exceeds the jurisdictional amount. In addition, plaintiff seeks punitive damages for each claim except Claim 4, the Right to Financial Privacy Act claim. In her opposition to the instant motion, plaintiff argues that the dissemination of her personal information caused her to suffer "for three consecutive years a significant and irreparable harm." (Pl. Opp'n 4.) Plaintiff argues that her damages and loss of income exceed the jurisdictional amount, noting the "three years of severe damage to my insurance business and personal income, which lost several thousands of dollars far exceeding the $75,000 federal requirement." (Pl. Opp'n 6.)[1]

The Credit Union argues that plaintiff cannot rely on this provision because nothing in her pleadings "suggests . . . even remotely" that the amount in controversy exceeds the jurisdictional threshold.[2]

The court finds that there is a "reasonable probability" that plaintiff's claims exceed the statutory jurisdictional amount. Plaintiff alleges that the Credit Union's failure to safeguard her private financial information caused significant damage to her business and reputation. The extent of damages is not certain, but any doubt must be resolved in plaintiff's favor.

The Credit Union has failed to overcome the presumption that plaintiff satisfies the amount-in-controversy requirement. The Credit Union has not shown "to a legal certainty" that

---

[1] Plaintiff's surreply additionally asserts that "as a businessperson for the past fifteen years in the insurance business, and as the president of the over 60,000 member Polish-American organization" she is confident that her damages exceed the jurisdictional amount. (Dkt. No. 20.)

[2] The Credit Union does not dispute the diversity of the parties. The court's own examination indicates that the diversity requirement is satisfied where, as here, plaintiff resides in New Jersey and the Credit Union operates under a federal charter with its principal place of business in New York.

the amount in controversy falls short. The three decisions cited by the Credit Union are inapposite. See Tongkook Am., Inc. v. Shipton Sportswear Co., 14 F.3d 781 (2d Cir. 1994) (dismissing case where post-filing discovery revealed a pre-filing letter of credit reducing contract damages to below jurisdictional amount); Weichert v. Tommie, 2006 WL 3782707 (N.D.N.Y. Dec. 21, 2006) (dismissing case where "amount in controversy was a maximum of $6,500–the value of the contract between Plaintiff and Defendant"); O'Conner v. Sears Holding Corp., 2006 WL 2355840 (E.D.N.Y. Aug. 14, 2006) (dismissing where actual costs arising out of damage to car amount to a few thousand dollars and punitive damages not recoverable under state law).

Accordingly, the jurisdiction of the court has been properly invoked. In light of this disposition, there is no need to address the parties' dispute over whether plaintiff may invoke the court's jurisdiction under 28 U.S.C. § 1331.

## CONCLUSION

For the reasons set forth above, the court denies the Credit Union's motion to dismiss for lack of subject matter jurisdiction. Because the scope of discovery on the unchallenged negligence and breach of contract claims is identical to that on the ten claims defendant seeks to dismiss under Fed. R. Civ. P. 12(b)(6), the court hereby deems that portion of the motion withdrawn without prejudice to renewal. It is further ordered that the parties report to the Honorable Lois Bloom, United States Magistrate Judge, to proceed with discovery.

SO ORDERED.

s/ Judge Allyne R. Ross

Allyne R. Ross
United States District Judge

Dated: August 10, 2007
Brooklyn, New York

SERVICE LIST:

**_Pro Se_ Plaintiff**
Bozena Kaminski
14 Chadwick Road
Livington, NJ 07039



**Defendant's Attorney**
Roger A. Goodnough
Torre, Lentz, Gamel, Gary & Rittmaster, LLP
100 Jericho Quadrangle, Suite 309
Jericho, NY 11753-2702



cc:     Magistrate Judge Bloom